IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:15-CV-00002-FL

| | |
|---|---|
| ABDU-SALIM GOULD, | ) |
| Plaintiff, | ) |
| v. | ) ORDER AND MEMORANDUM AND RECOMMENDATION |
| MINISTER LOUIS FARRAKHAN, NATION OF ISLAM, NATION OF ISLAM PRISON REFORM MINISTRY, and SUPPORT PRISON REFORM, INC., NFP, | ) |
| Defendants. | ) |

This matter is before the court for review of Plaintiff Abdu-Salim Gould's ("Plaintiff") complaint [DE-1] pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff also filed two memoranda in support of his complaint [DE-6, -10] and a motion for appointment of counsel [DE-7]. For the reasons set forth below, Plaintiff's motion for appointment of counsel is denied and it is recommended that Plaintiff's complaint be dismissed for failure to state a claim.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the State of North Carolina. Proceeding *pro se* and *in forma pauperis*, Plaintiff filed this action pursuant to 42 U.S.C. § 1983, against Defendants Louis Farrakhan, the Nation of Islam, the Nation of Islam Prison Reform Ministry, and Support Prison Reform, Inc., NFP ("Defendants") alleging Defendants committed a variety of federal and constitutional violations, which he lists as embezzlement, extortion, fraud, conspiracy, slavery, human rights violations, unconscionability, abuse of power, freedom of

contract, misrepresentation, and exploitive contracts. Compl. [DE-1]; Mem. in Supp. [DE-6] at 1; Mem. in Supp. [DE-10] at 1-13. Plaintiff seeks monetary relief of $5,000,000.00 in nominal damages, $5,000,000.00 in compensatory damages, and $5,000,000.00 in punitive damages and various injunctive relief, including ordering the Defendant organizations be run for the benefit of the people as religious organizations and not businesses. Compl. at 5; Mem. in Supp. [DE-10] at 13.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, the court reviews the allegations of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B), and shall dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant immune from such recovery. 28 U.S.C. § 1915(e)(2)(B)(i-iii); *see Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (explaining Congress enacted predecessor statute 28 U.S.C. § 1915(d) "to prevent abuse of the judicial system by parties who bear none of the ordinary financial disincentives to filing meritless claims").

A case is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) ("Examples of frivolous claims include those whose factual allegations are 'so nutty,' 'delusional,' or 'wholly fanciful' as to be simply 'unbelievable.'"). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28. In determining whether a complaint is frivolous, "a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept

without question the truth of the Plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Rather, the court may find a complaint factually frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." *Nagy v. Fed. Med. Ctr. Butner*, 376 F.3d 252, 256-57 (4th Cir. 2004) (some internal quotation marks omitted). In making its frivolity determination, the court may "apply common sense." *Nasim v. Warden., Md. House of Correction*, 64 F.3d 951, 954 (4th Cir. 1995).

In order to state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Id.* In the present case, Plaintiff is proceeding *pro se* and pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). This court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994). However, the principles requiring generous construction of *pro se* complaints are not without limits; the

3

district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

**A.     Frivolity Review**

Adhering to the principle that *pro se* pleadings should not be held to the same stringent standards as those of attorneys, the allegations contained in Plaintiff's complaint have been liberally construed. However, even affording Plaintiff a generous construction of the allegations, the complaint fails to state a claim under § 1983.

Plaintiff alleges that he is a member of the Nation of Islam and has made great contributions to his Nation with little recognition. Compl. at 3. He asserts that many of his brothers of the Nation of Islam live in constant fear of assassination from Defendant Farrakhan and that many have been slain for speaking out against "the extortion by fear and mis-use of our people . . . ." *Id.* at 3-4. Plaintiff appears to suggest that donations and charity meant to help the people of the Nation of Islam, through the Nation of Islam Prison Reform Ministry and Support Prison Reform (collectively, the "Prison Reform Entities"), have been misappropriated for the personal benefit of Defendant Farrakhan and other unspecified leaders of the Nation of Islam. *Id.* at 4. Plaintiff specifically alleges that he himself has applied for assistance from the Prison Reform Entities and was denied, despite the fact that he is an avid reader of The Final Call, a publication costing $200.00, and that he has made numerous donations and contributions. *Id.* at 6. He also alleges that the money is kept in Chicago or at a slave plantation in Georgia, and to receive help a person must subject himself to being a slave under a master. *Id.* Plaintiff additionally makes allegations regarding Defendant Farrakhan's association with Arab Muslims

and the need for a peaceful solution to the conflict between Muslims in America and other Muslims. *Id.* Plaintiff also complains that Defendant Farrakhan claims to be Muslim but preaches as a Christian Baptist minister. *Id.* at 4.

In his first memorandum in support, Plaintiff discusses various teachings of Defendant Farrakhan and reasserts that the Prison Reform Entities are being misused. Mem. in Supp. [DE-6] at 1-5. Plaintiff specifically asserts that he has been tazed, wrongfully prosecuted, disabled, held in jail under cruel and unusual circumstances under a $400,000 cash bond for no reason having not been found guilty of any crime, and has received no support from the Prison Reform Entities. *Id.* at 5. In his second memorandum in support, Plaintiff asserts that as a member of the Nation of Islam he is entitled to protection from deprivation of his constitutional rights under § 1983, specifically his First Amendment rights of freedom to assemble, freedom of religion, and freedom of speech. Mem. in Supp. [DE-10] at 1-2. Plaintiff asserts that the Prison Reform Entities are registered corporations of the United States and therefore both the Entities and their leader Defendant Farrakhan are a "person" subject to liability under § 1983. *Id.* at 2-3. Plaintiff again asserts that the Prison Reform Entities are being misused and that he receives no benefit from these organizations despite his support of them. *Id.* at 3-13. Finally, Plaintiff asserts that his injuries include violation of the Stewart B. McKinney Homeless Assistance Act and the Disabled Persons Act (presumably the Americans with Disabilities Act) from lack of reform and support from the Prison Reform Entities.[1] *Id.* at 12.

---

[1] Plaintiff merely mentions these laws in passing and fails to allege any facts in his complaint that would support claims under the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. § 11301 et seq., "whose aim is to transform surplus government property into facilities for the homeless," *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 129 (D.D.C. 2012) (citation omitted), or the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., whose purpose is to eliminate discrimination against individuals with disabilities, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001).

5

Section 1983 imposes liability on anyone who, under the color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, section 1983 is not a "source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (citations omitted). Thus, to state a cause of action under § 1983, a plaintiff must allege facts indicating a deprivation of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 49-50 (1988).

Construing Plaintiff's allegations in the light most favorable to him and assuming Plaintiff has sufficiently asserted a constitutional deprivation, Plaintiff's complaint fails to state a claim under § 1983 because there is no allegation that Defendants are acting under the color of state law and his legal arguments to the contrary are meritless. The Defendants here are a private individual and private entities, and there are no facts alleged in the complaint that could be read to support that these Defendants were acting under the color of state law. *See Rodgers v. Waste Indus., Inc.*, No. 4:12-CV-294-FL, 2013 WL 4460265, at *4 (E.D.N.C. Aug. 19, 2013) (unpublished) (explaining that private action may be found to constitute state action "(1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.") (quoting *Andrews v. Fed. Home Loan Bank*, 998 F.2d

214, 217 (4th Cir. 1993)), *aff'd*, 553 F. App'x 332 (4th Cir. 2014); *Philips v. Pitt Cnty. Mem'l Hosp.*, 503 F. Supp. 2d 776, 780 (E.D.N.C. 2007) ("Liability under Section 1983 extends only to persons acting under color of state law . . . ."), *aff'd*, 572 F.3d 176 (4th Cir. 2009). Moreover, Plaintiff's legal argument that the Prison Reform Entities are subject to § 1983 liability solely because they are incorporated in the United States finds no support in the law. "The critical inquiry in each case is whether the private actor's conduct was fairly attributable to the state." *Id.* at *5 (citing *Mentavlos v. Anderson*, 249 F.3d 301, 313 (4th Cir. 2001)). The complaint here is devoid of any allegation to support a finding that the alleged conduct is attributable to the state. Accordingly, it is recommended that Plaintiff's complaint be dismissed for failure to state a claim under § 1983.[2]

## B. Motion for Appointment of Counsel

Plaintiff seeks court-appointed counsel in this case. [DE-7]. There is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for *pro se* civil litigants "only in exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). "Exceptional circumstances exist where 'a pro se litigant has a colorable claim but lacks the capacity to present it.'" *Hall v. Holsmith*, 340 F. App'x 944, 946 (4th Cir. 2009) (quoting *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 298 (1989)). Plaintiff has failed to allege a colorable claim, and his motion for appointment of counsel is denied.

---

[2] To the extent Plaintiff attempts to raise claims other than under § 1983, they are undecipherable and courts are not required "to conjure up questions never squarely presented to them." *Beaudett*, 775 F.2d at 1278. "To do so would not only strain judicial resources by requiring [district] courts to explore exhaustively all potential claims of a *pro se* plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* (citing *Gordon v. Leake*, 574 F.2d 1147, 1151 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978)).

## IV. CONCLUSION

For the reasons stated above, the motion for appointment of counsel is denied and it is RECOMMENDED that the complaint be DISMISSED for failure to state a claim.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SO ORDERED AND SUBMITTED, the  5  day of February 2015.

Robert B. Jones, Jr.
United States Magistrate Judge